UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


WARREN R. WATKINS

                                    CIVIL ACTION

VERSUS

                                    NUMBER 12-366-SCR

RECREATION AND PARK COMMISSION
FOR THE CITY OF BATON ROUGE


**SUPPLEMENTAL RULING ON MOTION FOR SUMMARY JUDGMENT**

Before the court is the Motion for Summary Judgment filed by defendant Recreation and Park Commission for the Parish of East Baton Rouge, hereafter ("BREC").  Record document number 22.  The motion is opposed.[1]

In the Ruling on Motion for Summary Judgment issued December 13, 2013, the Motion for Summary Judgment filed by defendant BREC was granted on the plaintiff's claims under Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Louisiana Employment Discrimination Law, LSA-R.S. 23:332, for disparate treatment and hostile work environment based on race, and the plaintiff's retaliation claim under Title VII.  This supplemental ruling gives the reasons for dismissing those claims.  This supplemental ruling also dismisses the plaintiff's state law whistleblower claim under LSA-R.S. 23:967.

---

[1] Record document number 42.  BREC filed a reply memorandum. Record document number 48.  Pursuant to the court's Order Setting Time to File Supplemental Memoranda, the parties filed additional memoranda addressing the plaintiff's whistleblower claim. Record document numbers 56, order, 57 and 58, memoranda.

**Background**

Plaintiff Warren R. Watkins, filed a Complaint against BREC for claims arising out of his employment as a welder from July 2004 to March 28, 2012.  Plaintiff alleged claims under Title VII, 42 U.S.C. § 2000e-2(a)(1), for disparate treatment and hostile work environment based on race,[2] and also alleged a retaliation claim under Title VII.  Plaintiff's supplemental state law claims for discrimination and retaliation were brought under LSA-R.S. 23:332, Louisiana Employment Discrimination Law ("LEDL"), and La.R.S. 23:967, the Louisiana Whistleblower statute.

The following summary generally consists of the plaintiff's employment history with BREC and its purpose is to provide general background information.  It does not repeat all the relevant and undisputed facts contained in the summary judgment record.

In July 2004, BREC hired the plaintiff as a welder and assigned him to park operations.  Plaintiff's foreman and direct supervisor was Donnie Broussard, the trades foreman for park operations.[3]  Plaintiff's next level supervisor was Mike Amond, BREC's senior trades foreman.[4]  Broussard and Amond interviewed the plaintiff for the welder position.  During the tenure of the

---

[2] Plaintiff is black.  Record document number 1, Complaint, ¶ 3.

[3] Record document number 22-5, Exhibit I.

[4] Record document number 22-5, Exhibit G.

2

plaintiff's employment Mark Lee and Justin Smith held the positions of assistant director and director of park operations.[5]  Mike Hano, who the plaintiff alleges was similarly situated to him and received more favorable treatment, began working as a welder when he was transferred into the position in June 2010.[6]

According to the plaintiff's verified Complaint, deposition testimony and his October 21, 2011 charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), beginning approximately March 1, 2011 and continuing thereafter the plaintiff claimed that he was subject to unfair treatment and was denied training opportunities because of his race.  The substance of the plaintiff's first EEOC charge stated as follows:

> There are only two Welders in my department.  I am the only Welder that has not been given key holder access to the new facility.  The white welder, Mike Hayno, was given keys to the new facility. Also, there has been a distinction in which employee is given additional training opportunities. Mike Amond, White Supervisor, gave Mike Hayno additional training opportunities that were never afforded to me.  When I questioned Mike Amond about the being excluded from training opportunities and key holder access, he became angry and stated I would never have key holder access.[7]

With the exception of three incidents that began or occurred prior to March 2011, the plaintiff's Complaint alleged a series of

---

[5] Record document number 33-2, Exhibits 2 and 3.

[6] Broussard, Amond and Hano are white.

[7] Record document number 22-3, Exhibit C, Plaintiff's EEOC charge number 461-2011-01890, October 21, 2011; record document number 1-4, Notice of Right to Sue, March 23, 2012.

3

racially discriminatory and retaliatory actions that occurred up until and including his termination on March 28, 2012.

On March 22, 2012 Broussard and Amond held a meeting with the plaintiff to counsel and advise him of BREC policies that related to multiple deficiencies in performance.[8]  Plaintiff refused to sign the memorandum of his counseling session and was advised that his refusal was an act of insubordination.  Plaintiff still refused to sign.  Plaintiff was suspended for three days without pay pending termination, and was advised to go to human resources on March 28, 2012.  At a meeting on March 28 the plaintiff again refused to sign the counseling form and was terminated.[9]  Plaintiff appealed his termination to the BREC Ad Hoc Peer Review Committee, which met on May 3, 2012 to hear the plaintiff's appeal of his termination.  The committee recommended that the plaintiff's March 28 termination be rescinded and the plaintiff reinstated to his position, with three conditions:

> Adhere to and comply with all BREC Rules and Regulations and follow supervisor's instruction concerning job-related matters.  Includes signing counseling sessions and/or incident reports.
>
> Show a willingness to improve you overall cooperation and attitude to work with management personnel and the employees with whom you work and put an end to the

---

[8] Record document number 22-5, Exhibit J, March 22, 2012 memorandum of counseling session.

[9] Record document number 22-2, Statement of Uncontested Material Facts, Numbers 12, 14 and 15, including exhibits and deposition testimony cited.

adversary relationship.   We want to provide you with every opportunity to be successful in your career her at BREC.

Schedule a counseling session to meet with a professional of the Employee Assistance Program (EAP) to help you work through your personal/work-related problems that may be affecting your job performance.[10]

Plaintiff refused to accept the offer of reinstatement and chose to appeal his termination to the Human Resources Grievance Committee.  This appeal was documented in a letter signed by the plaintiff on May 18, 2012.[11]  The letter also stated that the committee determined to let stand the three day suspension/leave without pay.  At the Human Resources Complaint Resolution Committee, which met to hear the plaintiff's appeal on June 11, 2012, the plaintiff appeared and notified the committee that he did not want his job back under the conditions listed, but wanted the opportunity to confront the BREC employees he listed as witnesses as to the reasons for his termination and to clear his name.  Based on the plaintiff's statements the hearing was adjourned, and the plaintiff's status as terminated from his position with BREC remained unchanged.[12]

_____

[10] Record document number 22-5, Exhibit M, May 9, 2012 letter to plaintiff signed by Superintendent Carolyn B. McKnight.

[11] Record document number 22-2, Statement of Uncontested Material Facts, Number 16, including exhibits and deposition testimony cited.

[12] *Id.,* Number 17, including exhibits and deposition testimony cited.

On August 2, 2012 the plaintiff filed a second charge of discrimination with the EEOC alleging that his termination on March 28, 2012 was retaliation for filing his previous EEOC charge. Plaintiff stated in this charge:

> I previously filed a complaint with the EEOC, Charge number 461-2011-01890. A no cause was issued on March 23, 2012.  On February 3, 2012, I was issued a work assignment sheet which contained a "booger" on it.  I did not inform Donnie Broussard, Supervisor.  I reported it to Stephanie Trim, Director of Human Resources, but nothing was done.  On March 22, 2012, I was suspended due to not signing a write up regarding work performance.  On March 28, 2012, I was terminated by Justin Smith, Park Director for insubordination.[13]

Plaintiff was issued a Notice of Right to Sue on this charge on September 12, 2012.

## Summary Judgment Standard and Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at

---

[13] Record document number 22-3, Exhibit D, EEOC charge 27A-2012-00051 dated August 2, 2012.

252, 106 S.Ct. at 2512.    This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.    The court may not make credibility findings, weigh the evidence, or resolve factual disputes.    *Id.; Reeves v. Sanderson Plumbing Prods., Inc.*,    530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).    On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The applicable substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).    The following substantive law is applicable in this case.

7

**Race and Hostile Work Environment Discrimination Claims**

The well-established *McDonnell Douglas*[14] framework is applied to consideration of race discrimination claims brought under federal and state law.[15]  To establish a prima facie case of race discrimination, the plaintiff must demonstrate that he is:  (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and, (4) was replaced by someone outside of the protected class, or that others outside of the protected group and similarly situated were treated more favorably.  *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001).  The elements of a plaintiff's prima facie case necessarily vary depending on the particular facts of each case, and the nature of the claim. *LaPierre v. Benson Nissan, Inc*., 86 F.3d 444, 448 (5th Cir. 1996); *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.  The burden is one of production, not persuasion, and "can involve no

---

[14] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[15] Race discrimination in employment claims under Title VII and the LEDL are governed by the same analysis.  *See, Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 123 (5th Cir. 2011); DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

credibility assessment." *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, citing, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of the picture. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The *McDonnell Douglas* framework with its presumptions and burdens disappears, and the only remaining issue is discrimination vel non. The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *Id.*; *Reeves*, supra.

A plaintiff may attempt to establish that he was the victim of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief. The trier of fact may also consider the evidence establishing the plaintiff's prima facie case, and inferences properly drawn from it, on the issue of whether the defendant's explanation is pretextual. *Reeves*, supra; *Russell*, 235 F.3d at 222-23. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 120 S.Ct. at

2108-09; *Russell*, 235 F.3d at 223.

Whether summary judgment is appropriate in any particular case will depend on a number of factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence relevant to the employer's motive. *Reeves*, 120 S.Ct. at 2109; *Crawford*, 234 F.3d at 902. The ultimate determination in every case is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable fact finder could infer discrimination. *Crawford*, supra.

As a result of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003), the Fifth Circuit has developed a modified *McDonnell Douglas* approach under which a plaintiff relying on circumstantial evidence in support of his claim is not limited to demonstrating that the defendant's reason is pretextual, and may alternatively establish that discriminatory animus was a motivating factor in an adverse employment decision. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351-352 (5th Cir. 2005), citing, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

The parties' burdens under the modified *McDonnell Douglas* approach are as follows:

> [Plaintiff] must still demonstrate a prima facie case of
> discrimination; the defendant then must articulate a

10

> legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).

*Machinchick*, 398 F.3d at 352; *Keelan*, 407 F.3d at 341.

Therefore, to withstand summary judgment, using direct or circumstantial evidence, the plaintiff is required to present sufficient evidence for a reasonable jury to conclude that race was a motivating factor for the defendant's adverse employment action. *Roberson v. Alltell Information Services*, 373 F.3d 647, 652 (5th Cir. 2004).

Adverse employment actions include only ultimate employment decisions such as hiring, granting/denying leave, discharging, promoting or compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

Plaintiff may also establish a violation of Title VII and the LEDL by proving that the workplace is permeated with discriminatory intimidation, ridicule and insult which is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370 (1993); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001); *Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002); *Assamad v. Percy Square and*

11

*Diamond Foods, LLC,* 2007-1229 (La.App. 1 Cir. 7/29/08), 993 So.2d 644, 648, *writ denied,* 2008-2138 (La. 11/10/08), 996 So.2d 1077. In order to hold an employer liable for a claim that race discrimination has created an abusive or hostile working environment, a plaintiff must prove the following four elements in cases where it is asserted that a supervisor with authority to take tangible employment actions against an employee perpetrated the harassment: (1) that he belongs to a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on a prohibited ground, such as race; and, (4) that the harassment affected a term, condition, or privilege of employment. *Vance v. Ball State* University, _____ U.S. _____, 133 S.Ct. 2434, Watts *v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).[16]   A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 133 S.Ct. at 2442, citing, *Ellerth*, 524 U.S at 762, 118 S.Ct. 2257.

If the alleged harassment is committed by a co-worker or a supervisor who is not empowered by the employer to take tangible employment actions, the plaintiff must also prove a fifth element - that the employer knew or should have known of the harassment and

---

[16] *Citing*, *Burlington Ind. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998).

failed to take prompt remedial action. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004), *citing*, *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987); *Vance*, 133 S.Ct. at 2441.

For harassment to affect a term, condition or privilege of employment it must be both objectively and subjectively severe or pervasive, i.e., the work environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Whether a working environment is objectively hostile or abusive is determined by considering the totality of the circumstances. Courts look to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance, and (5) whether the conduct undermines the plaintiff's workplace competence. *Hockman*, 407 F.3d at 325-26; *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

Not all harassment will affect the terms, conditions, or privileges of employment. The mere utterance of an offensive comment or remark which hurts an employee's feelings is not sufficient to affect the conditions of employment. Simple teasing, offhand comments, and isolated incidents, unless they are extremely

13

serious, are not sufficient to affect the terms, conditions or privileges of employment. *Lauderdale*, *supra*; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

**Retaliation Claims**

A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) by proving that: (1) he or she engaged in activity protected by the statute; (2) an adverse employment action occurred; and, (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007); *LeMaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007).[17]

An employee has engaged in protected activity if he or she has: (1) opposed any practice made an unlawful employment practice by the statute; or, (2) made a charge, testified, assisted or participated in any manner in a Title VII investigation, proceeding or hearing. *Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 140 (5th Cir.1996). The opposition clause requires the employee to show that he or she had at least a reasonable belief that the practices opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). However, proof of an actual

---

[17] Anti-retaliation provisions are absent from the sections of the LEDL that prohibit discrimination based on race, color, religion, sex and national origin. *See*, *Smith v. Parish of Washington,* 318 F.Supp.2d 366, 373 (E.D.La. 2004); *Glover v. Smith*, 478 Fed.Appx. 236 (5th Cir. 2012); *Corley v. Louisiana ex re. Div. of Admin.,* 498 Fed. Appx. 448 (5th Cir. 2012).

unlawful employment practice is not required to state a claim for unlawful retaliation. *Id.*, at 309, n.10, *citing*, *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981).

Title VII's retaliation provision is not limited to actions and harms that relate to employment or occur at the workplace, or to ultimate employment decisions. It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2415 (2006); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008).

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him. *McCoy*, 492 F.3d at 562. Such temporal proximity must generally be very close. The Fifth Circuit has found, for example, that a time lapse of up to four months may be sufficiently

close, while a five month lapse is not close enough without other evidence of retaliation. Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures. *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.* 730 F.3d 450, 454 –455 (5th Cir. 2013).

If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ____U.S. ____, 133 S.Ct. 2517, 2533 (2013); *Feist*, 730 F.3d at 454. Therefore, a plaintiff making a Title VII retaliation claim must establish that his protected activity was a but-for cause of the alleged adverse action by the employer, which is a more demanding standard than the motivating-factor standard that applies to status-based discrimination. *Nassar*, 133 S.Ct. at 2532-33.

To avoid summary judgment the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir.1996).

Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.  Temporal proximity, standing alone, is not enough.  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Hernandez v. Yellow Transp., Inc.*  670 F.3d 644, 658 (5th Cir. 2012).

The Louisiana Whistleblower statute, LSA-R.S. 23:967 provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

The statute also states: "Reprisal includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected" under the statute.  LSA-R.S. 23:967(C)(1).  While the Louisiana Supreme Court has not interpreted this statute, it is the consensus thus far of the lower Louisiana courts that the employer must have committed an actual violation of state law.  *Beard v. Seacoast Elec., Inc.*, 2006-1244 (La.App. 4 Cir. 2/4/07), 951 So.2d 1168; *Accardo v. Louisiana Services & Indem. Co.*, 2005-2377 (La.App. 1

17

Cir. 6/21/06), 943 So.2d 381, 387; *Hale v. Touro Infirmary*, 2004-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 2005-0103 (La. 3/24/05), 896 So.2d 1036; *Puig v. Greater New Orleans Expressway Comm'n*, 2000-924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, *writ denied*, 2000-3531 (La. 3/9/01), 786 So.2d 731; *Dillon v. Lakeview Regional Medical Center Auxilliary,* Inc., 2012 WL 2154346 (La.App. 1 Cir., June 13, 2012); Diaz *v. Superior Energy Services LLC*, 341 Fed.Appx. 26 (5th Cir. 2009). Therefore, under LSA-R.S. 23:967 the plaintiff must prove an actual violation of state law, not just a good faith belief that a law was broken.[18]

Other than this difference, the standards for analyzing a retaliation claim under the Louisiana Whistleblower statute is the same as that applied in Title VII retaliation cases. *Strong*, *supra*; *Haire v. Board of Sup'rs of Louisiana State Univ.,* 719 F.3d 356, 364 (5th Cir. 2013).

## Analysis

The following analysis does not recite every argument or bit of summary judgment evidence contained in the extensive summary judgment record. However, all of the arguments and competent summary evidence submitted by the parties,[19] even if not

---

[18] Proof of an actual unlawful employment practice is not required for a Title VII retaliation claim. *Long*, *supra*.

[19] Defendant filed a Motion to Strike Exhibits, seeking to strike all or part of various exhibits that were filed by the
(continued...)

specifically   mentioned   have   been   reviewed   and   carefully
considered.[20]

## Title VII and LEDL Race Discrimination Claim

With regard to the plaintiff's race discrimination claim under
Title VII and the LEDL, there is no dispute as to the first two
elements of the prima facie case – the plaintiff is in a protected
class and was qualified for his welder position.   However, the
defendant argued that the evidence demonstrates that the plaintiff
did not suffer an ultimate or materially adverse employment action
because he was offered reinstatement, which he refused.   At the
same   time   the   defendant   maintained   that   any   adverse   employment

---

[19](...continued)
plaintiff in support of his opposition to the defendant's Motion
for Summary Judgment.   Record document number 47.   Plaintiff
opposed that motion.   Record document number 51.   In ruling on the
defendant's Motion for Summary Judgment, the court did not consider
any inadmissible opinions, speculation or hearsay contained in the
depositions, affidavits, declarations, and other exhibits.   All of
the remaining evidence was reviewed in light of the applicable law,
to determine whether there was a genuine dispute for trial as to
the plaintiff's claims of discrimination and retaliation.   A
separate ruling on the defendant's Motion to Strike will be issued.

[20] The court notes that the plaintiff's opposition memorandum
is 60 pages and lacks subheadings or any other discernable method
of organization.   It also contains many lengthy quotations from
cases with little or no explanation of how the cases or quotations
relate to the elements of the plaintiff's claims and the summary
judgment evidence.   This made it very difficult to distinguish what
arguments and evidence the plaintiff is relying on as support for
each of his claims.   Furthermore, in many instances the plaintiff
just cited his entire affidavit or deposition in support of an
argument.   Rule 56 does not impose on the court a duty to sift
through the record in search of evidence to support the plaintiff's
opposition to the defendant's summary judgment motion.   *See*, *Adams
v. Travelers Indem. Co.,* 465 F.3d 156, 164 (5th Cir. 2006).

19

actions against the plaintiff were taken for legitimate, non-discriminatory reasons, which the plaintiff has no evidence to dispute or otherwise show were motivated by race.

Since the defendant has presented summary judgment evidence to establish the non-discriminatory reasons for its employment decisions, for purpose of this motion the three day suspension without pay and termination will be considered ultimate and materially adverse employment actions.[21]   Therefore, all the competent summary judgment evidence will be considered in light of the plaintiff's burden of proving that race was a motivating factor in his suspension without pay and termination.

The following summary of facts contained in the record establishe the defendant's legitimate non-discriminatory reasons for the plaintiff's suspension and termination.   Defendant submitted evidence which showed that, contrary to BREC policy, the plaintiff was taking his BREC vehicle home during his lunch break without permission from his supervisor.[22]   Plaintiff's direct supervisors Broussard and Amond also began to notice a decline in the plaintiff's attitude and performance.   They decided to document

---

[21] *See*, *LeMaire v. Louisiana Dept. of Transp. and Dev.,* 480 F.3d 383, 390 (5th Cir. 2007); *Johnson v. Alice Independent School Dist.*, 2012 WL 4068678 (S.D. Tex. Sept. 14, 2012);

[22] Record document number 22-3, Exhibit B, Trim affidavit; record document number 22-5, Exhibit G, Amond affidavit; record document number 22-5, Exhibit I, Broussard affidavit (hereafter, Trim, Amond or Broussard affidavit).

and discuss these issues in a counseling session with the plaintiff held on March 22, 2012.  The reasons for counseling were set forth in a document addressed to the plaintiff, which stated that the plaintiff was being counseled and advised of the following deficiencies:  (1) routinely making excessive trips to supply houses and unproductive use of work time and resources; (2) lack of productivity/taking too long to perform job assignments; (3) taking his BREC vehicle home on March 21, 2012 during his lunch break without direct permission from his supervisor; (4) failing to follow proper procedures related to filling out daily assignment sheets, logging purchases from vendors, and other essential information for budget tracking; and, (5) lack of a positive attitude that was affecting his productivity and crew morale.

The counseling session document was signed by Broussard and Amond, and the form also had a line for the plaintiff to sign. After the counseling session the plaintiff refused to sign the form.  Plaintiff was notified that the refusal was insubordination and could lead to a three day suspension, but he again refused to sign the form.  Plaintiff also refused to sign the report of the insubordination incident written and signed by Amond.  Mark Lee then came to the meeting and instructed the plaintiff to sign. When the plaintiff refused he gave the plaintiff a three day suspension.

Plaintiff attended a meeting at BREC's human resources office

six days later on March 28, where he was again asked to sign the
document.   Plaintiff refused, and as a result he was terminated.
Plaintiff  acknowledged  that  the  form  did  not  state  that  his
signature  would  be  an  admission  of  what  was  stated  in  it.
Plaintiff,  however,  believed  that  the  items  listed  were  false
allegations  and  that  signing  the  form  would  indicate  that  he  was
admitting  that  his  supervisors'  statements  had  merit  and  were
true.[23]

    Plaintiff's appeals of his termination resulted in an offer of
reinstatement,  provided  the  plaintiff  agreed  to  several  provisions
outlined  in  documents  dated  May  8  and  May  18,  2012:  (1)  follow  his
supervisor's  instructions  in  the  future,  including  signing
counseling  and  incident  reports;  (2)  improve  his  attitude  with
management  and  co-workers;  and,  (3)  schedule  an  appointment  for
Employee  Assistance  counseling.[24]   Plaintiff  refused  reinstatement
with these conditions.  Plaintiff testified that he refused because
he believed that to do so would be admitting that "they were right
and I was wrong," and he believed that he would be agreeing to do
the  same  thing  that  he  refused  to  do  earlier  -  sign  a  document
which  would  indicate  or  admit  that  he  was  guilty  of  whatever  was

---

    [23] Record  document  number  22-4,  Plaintiff's  deposition,  pp.
141-48, 153 (hereafter, plaintiff depo.)

    [24] Record  document  number  22-5,  Exhibits  M  and  N.

stated in the document.[25]

In response to this evidence the plaintiff failed to come forward with evidence sufficient for a reasonable trier of fact to conclude that BREC's stated reasons for suspending and then terminating his employment were false, or that race was a motivating factor. While the plaintiff generally denied the statements regarding his performance and attitude problems contained in the March 22 counseling letter, he failed to come forward with specific evidence to dispute them. Plaintiff also did not dispute the multiple times that he refused to sign the form, nor that he refused reinstatement because he maintained his right to reject his supervisors' instructions to sign counseling and incident reports he believed were false.

Plaintiff attempted to dispute BREC's reasons and create a genuine dispute for trial by relying on evidence that: (1) his prior job evaluations were all good or excellent;[26] (2) during the appeals process he was offered reinstatement, which showed that he did not have deficiencies in his job performance and was not insubordinate in the first place; (3) when he appealed the denial of unemployment benefits, the administrative law judge found that

---

[25] Plaintiff depo., pp. 150-54.

[26] From his hiring as a welder in July 2004, the plaintiff's annual evaluations, signed by Broussard, were either good or excellent. Plaintiff's April 19, 2011 evaluation was excellent. Record document number 42-3, Exhibit 21.

his discharge was not for misconduct connected with his employment and reversed his disqualification for benefits;[27] and, (4) white BREC employees under nearly identical circumstances were not disciplined and/or given preferential treatment.[28]

Review of these arguments and the related evidence does not create a genuine dispute for trial on the plaintiff's claim of race discrimination.

Plaintiff relied on his excellent job performance evaluations throughout his employment with BREC, the last one of which was completed by his supervisors Broussard and Amond on April 19, 2011. However, these evaluations, with the last one done almost a year before the counseling session, contain nothing to contradict or support a reasonable inference that any of the specific items listed in the March 22 counseling letter were false. Similarly, the offer of reinstatement was conditioned on the plaintiff's agreement to improve his attitude, schedule an appointment for employee assistance counseling, and follow instructions in the future, including signing counseling and incident reports. The offer of reinstatement is not evidence from which a reasonable trier of fact could find that the plaintiff was not insubordinate or did not engage in the conduct cited in the March 22 counseling

---

[27] Record document number 42-4, Exhibit 30.

[28] Plaintiff did not argue, and there is no evidence, that the plaintiff was replaced someone outside his protected class.

24

letter.  Contrary to the plaintiff's argument, the only reasonable inference supported by the terms of BREC's reinstatement offer is that BREC stood by its reasons for disciplining and terminating the plaintiff, and that it wanted the plaintiff to agree to correct these problems in order to be reinstated.

Plaintiff also relied on evidence that the state administrative law judge ("ALJ") reversed his disqualification for unemployment benefits.  The ALJ determined under the law governing the payment of state unemployment compensation benefits that the plaintiff was terminated for conduct not connected to his employment and should not be denied benefits.  Nothing in this finding disputes or contradicts the legitimate, non-discriminatory reasons for BREC's employment decisions.  It is simply a finding from an administrative hearing, applying different legal standards, that BREC's stated reasons did not disqualify the plaintiff from receiving unemployment benefits.  Furthermore, there is nothing in the legal or factual basis of the decision which supports a reasonable inference that race was a motivating factor in the plaintiff's suspension and termination.

Finally, the plaintiff argued that the evidence supports his claim of race discrimination because two similarly situated white employees - John Wright and Mike Hano - were not disciplined and/or received more favorable treatment.  However, the record contains no evidence to support a reasonable inference that these individuals

were similarly situated to, and engaged in conduct nearly identical to, the plaintiff but were not subject to any of the adverse employment actions imposed on the plaintiff.[29]

With regard to Wright, BREC presented evidence that employees were advised in a meeting held with all BREC employees that it was a violation of policy for an employee to go home in a BREC vehicle during lunch.[30] Plaintiff admitted that he sometimes took his BREC vehicle home on his lunch break and did not have permission. Plaintiff stated that he did not know this practice was prohibited prior to his counseling session on March 22, 2012, but he did not deny the meeting was held, or present any evidence that such a meeting did not take place.[31] Plaintiff attempted to dispute BREC's reasons and show disparate treatment by presenting evidence that

---

[29] In the context of a race discrimination claim where the plaintiff alleged that employees who were not members of the protected class received no discipline or more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated. The Fifth Circuit requires an employee who proffers a fellow employee as a comparator to demonstrate that the employment actions at issue were taken under nearly identical circumstances. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009).

[30] Trim affidavit,¶ 11; Amond and Broussard affidavits, ¶ 10.

[31] Plaintiff depo., pp. 79-87.

26

Wright took his vehicle home on March 29, 2012 and had been doing so for over 20 years without being counseled or disciplined. Defendant, however, presented uncontradicted evidence that based on Wright's personal circumstances he had permission from his supervisor to take his vehicle home during lunch. Plaintiff cannot dispute that Wright had permission, whereas he did not. Thus, there is no evidence to dispute BREC's legitimate, non-discriminatory reason for counseling the plaintiff about taking his BREC vehicle home at lunch, and no evidence to support the plaintiff's claim that he was being singled out and treated less favorably than a white employee who engaged in the same conduct.

With regard to Hano, the plaintiff relied on his own testimony that Hano was "less qualified" and various instances where Hano's work was deficient, but he was not disciplined in any way for his conduct. However, none of the evidence the plaintiff offers about Hano's employment supports a reasonable inference that he engaged in conduct nearly identical to the plaintiff, but was not subject to the disciplinary actions that were levied against the plaintiff.[32] Without such evidence a reasonable trier of fact could not infer that any difference in the treatment of Hano as compared to the plaintiff was motivated by the plaintiff's race.

In summary, without any evidence to dispute the legitimate,

_____

[32] For example, the plaintiff did not offer any evidence that Hano took his BREC vehicle home during lunch without permission, or that Hano was insubordinate to his supervisors.

27

non-discriminatory reasons given by the defendant for the plaintiff's suspension and termination, or evidence that similarly situated persons outside the protected class and under nearly identical circumstances were treated more favorably, there is no evidence from which a reasonable jury could infer that race was a motivating factor in the defendant's employment decisions. The above analysis demonstrates that the plaintiff has failed to come forward with sufficient evidence to create a genuine dispute for trial on his claim of race discrimination under Title VII and the LEDL.

### Title VII Retaliation Claim

There is no dispute as to the first element of the plaintiff's prima facie case of retaliation - the plaintiff engaged in protected activity when he filed a charge of race discrimination with the EEOC on October 21, 2011 while he was still employed by the defendant. However, the defendant argued that summary judgment should be granted because: (1) the plaintiff cannot establish that he suffered a materially adverse employment action; and (2) even if he could establish a materially adverse employment action, the plaintiff cannot show a causal connection, or that the reasons for the adverse employment actions were a pretext for retaliation.

It is assumed for purposes of this motion that the counseling, three day suspension without pay and termination are materially adverse employment actions. Defendant has come forward with

legitimate, non-retaliatory reasons for these employment decisions, which are the same as the legitimate, non-discriminatory reasons set forth in the analysis of the plaintiff's race discrimination. Therefore, the competent summary judgment evidence is considered in light of the plaintiff's burden of proving that the defendant would not have taken the adverse employment actions but for the plaintiff's protected activity of filing an EEOC charge.

Plaintiff relied on the same evidence as he did in his race discrimination claim to dispute the defendant's legitimate, non-retaliatory reasons for the March 2011 adverse employment actions. For the same reasons explained in the analysis of the race discrimination claim, the evidence the plaintiff cites is insufficient to dispute the defendant's legitimate, non-retaliatory reasons for the actions. With regard to the plaintiff's retaliation claim, the only other evidence that the plaintiff points to is the timing of the actions - the counseling session, followed closely by the plaintiff's suspension and termination, occurred approximately five months after the plaintiff filed his EEOC charge. This evidence of timing, given the absence of evidence to dispute the defendant's legitimate, non-retaliatory reasons, is insufficient for a reasonable trier of fact to conclude that the adverse employment actions would not have been taken but

for the plaintiff filing the EEOC charge.[33]  Plaintiff has failed
to demonstrate that there is a conflict in substantial evidence on
this essential element of his Title VII retaliation claim.
Therefore, summary judgment will also be granted as to this claim.[34]

**Title VII, LEDL Race-based Hostile Work Environment Claim**

Defendant argued that summary judgment should also be granted
as to the plaintiff's claim that he was subjected to a racially
hostile work environment.  Defendant argued for summary judgment on
the following grounds: (1) three incidents of alleged harassment
are time barred, because they occurred before the 300 day period
preceding the date the plaintiff filed his initial EEOC charge; (2)
plaintiff failed to present any evidence that the alleged acts of
racial harassment were sufficiently related to apply the continuing
violation exception; (3) the alleged acts of harassment the
plaintiff complained of were not objectively severe or pervasive,
such that they affected the terms and conditions of the plaintiff's
employment; (4) plaintiff cannot establish that the alleged actions
were taken because of his race; and (5) the plaintiff has no
evidence that BREC knew or should have known of the harassment and

---

[33] *See*, *Roberson*, 373 F.3d at 656.

[34] Notably, although the plaintiff alleged that his supervisors
took adverse employment actions against him because of his race and
in retaliation, when specifically asked at his deposition why he
thought Broussard, Amond, Lee, Smith and Trim were intimidating/
harassing him and wanted him terminated, the plaintiff answered, "I
have no idea."  Plaintiff depo., pp. 148-49.

failed to take prompt remedial action to stop it.

Review of the competent summary judgment evidence demonstrates that even if the plaintiff had sufficient evidence to show that because of his race he was subjected to actionable harassment (but he does not have such evidence), he failed to come forward with evidence that the defendant knew or should have known of the alleged harassment and failed to take prompt remedial action.[35] Defendant presented uncontradicted evidence that Smith and Lee, the director and assistant director of park operations, were the plaintiff's supervisors who had the authority to hire, fire, promote, reassign, and make employment decisions resulting in a significant change in benefits.  Broussard and Amond directed the plaintiff's daily work activities, but did not have the authority to take these tangible employment actions against the plaintiff. This is evidenced by the affidavits of Smith and Lee, the documents related to the plaintiff's suspension and termination, as well as the plaintiff's deposition testimony and his EEOC charge.[36] Plaintiff did not claim or present any evidence that the numerous acts of harassment he alleged were taken by Lee or Smith.

_____

[35] Based on this conclusion, it is unnecessary to address the defendant's remaining arguments for dismissal of this claim.

[36] Record document number 33-2, Exhibit 2, Lee affidavit, and Exhibit 3, Smith affidavit (hereafter Lee or Smith affidavit); record document number 22-5, Exhibits J and L; Plaintiff depo., 143-47; record document number 22-3, Exhibit D, August 2, 2012 EEOC charge.

Plaintiff set forth in his Complaint, affidavit and deposition testimony a litany of alleged harassment by Hano and other co-workers, namely Broussard and Amond.  However, as the analysis of the allegations below demonstrates, the plaintiff failed to present evidence from which a reasonable trier of fact could conclude that the defendant knew or should of known of the harassment and failed to take prompt remedial action.

Plaintiff alleged and testified that throughout his employment with the defendant, Broussard had a noose hanging in his bookcase. Plaintiff testified that he mentioned it to Broussard and reported it to Amond during the time of the Jena Six trial.  Plaintiff testified further that he never told Amond that he found it offensive and wanted it taken down, and never brought it to the attention of their supervisors.  This is consistent with the statements of Lee and Smith in their affidavits - plaintiff never complained to them about the presence of the noose.[37]

Plaintiff alleged and testified that in July 2009 he heard another BREC employee make a racial comment about President Obama and his appointment of a woman to the Supreme Court.[38]  According to the plaintiff, the incident happened in Broussard's office, and

---

[37] Plaintiff depo., pp. 32-37.  Lee and Smith also stated that their offices are in a different location, and they never observed the noose in Broussard's office.  Lee and Smith affidavits, ¶ 7.

[38] Plaintiff stated that the comment was made by Gary Cole who was an electrician, not a supervisor.  Plaintiff depo., p. 43-44.

Amond, who was in the room at the time, laughed at the comment. The group disbursed when they discovered the plaintiff overheard the comment. Plaintiff testified that he documented the incident but he never complained to anyone about it.[39]

Plaintiff alleged and testified that in August 2010 he found an email entitled "WHITE Pride" in the front seat of his car which was parked in the BREC parking lot. One of the email recipients listed was Broussard, but the plaintiff did not know the person who sent the email.[40] Plaintiff also did not know or attempt to find out who put the email in his car. Plaintiff testified that he did not discuss the email with any of his supervisors or co-workers. He did not complain about the email until he filed his Complaint.[41]

Plaintiff alleged numerous instances of harassment related to his co-worker, Hano. Plaintiff claimed that Hano was provided more

---

[39] Plaintiff depo., pp. 42-44. Plaintiff stated in his affidavit that the day it happened he complained to Broussard. Record document number 39-3, Exhibit 12, Watkins affidavit, ¶ 1. To the extent a party's affidavit contradicts his prior deposition testimony without explanation, he cannot use it to create a genuine issue of material fact for trial. *Doe v. Dallas Ind. School Dist.*, 220 F.3d 380 (5th Cir. 2000); *Avina v. JP Morgan Chase Bank, N.S.*, 413 Fed.Appx. 764 (5th Cir. 20 ). However, in this case the contradiction is of no consequence, since even if the plaintiff complained to Broussard, there is still no evidence of his complaining to Lee, Smith or any other higher-up BREC official.

[40] The person who sent the email was not a BREC employee. Trim affidavit, ¶ 14.

[41] Plaintiff depo. pp. 37-40. Plaintiff stated in his Complaint that he complained to Amond, but did not state this in his deposition testimony. Plaintiff depo., p. 39-40.

favorable working conditions in the new shop, whereas he did not have access to the shop and its more favorable accommodations and equipment.  Lee and Smith stated in their affidavits that the plaintiff did not complain to them about this issue prior to the filing of his October 21, 2011 EEOC charge, or complain to them about the manner in which he was given a shop key.[42]  Plaintiff provided no evidence to dispute these statements.[43]

Furthermore, the plaintiff presented no evidence to contradict the information contained in Broussard and Amond's affidavits - the new shop as well as the furniture and equipment in the shop were intended to be used by all employees and not designated solely for Hano.[44]  Likewise, the plaintiff testified that he did not know whether Hano was the only one who could use the shop accommodations, and acknowledged that no one ever told him that he could not use the items and equipment in the shop.  Consequently, the plaintiff's affidavit, in which he states that Broussard made clear that the shop was Hano's area and off limits to the plaintiff, is inconsistent with his deposition testimony.[45]

_____

[42] Lee and Smith affidavits, ¶¶ 8 and 10.

[43] In his deposition the plaintiff acknowledged that he primarily worked in the field and that Hano primarily worked in the shop.  Plaintiff testified that he preferred to work in the shop. Plaintiff depo., pp. 68, 75-76.

[44] Broussard and Amond affidavits, ¶ 5.

[45] Plaintiff depo., pp. 65-66, 118-22; Watkins affidavit, ¶¶
(continued...)

34

Although the plaintiff objected to the manner in which he was provided a key, he did not dispute that his supervisor provided him with one.

Plaintiff claimed that Hano was provided training but he was denied training. Plaintiff testified in his deposition that Hano needed training. Moreover, the plaintiff testified that during his employment with BREC he never asked his supervisors for any training on new equipment or any other training. Again, the plaintiff failed to present any evidence that he complained to any of his supervisors, including Lee or Smith, that he was subject to harassment by being denied training that was being provided to a similarly situated white co-worker.[46]

Plaintiff claimed racial harassment by being instructed to act as a helper to Hano. In his deposition the plaintiff testified that he was sometimes asked to go out and help Hano complete a job assignment, but he acknowledged that the circumstances under which he was instructed to help Hano were unlike those that indicated he was working as a "helper."[47] Furthermore, the plaintiff came forward with no evidence to dispute the defendant's evidence that the plaintiff never complained about this alleged harassment to

---

[45](...continued)
17 and 18.

[46] Plaintiff depo., pp. 73-76.

[47] Plaintiff depo., pp. 90-96.

35

Amond, Lee or Smith.[48]

Plaintiff alleged an instance of harassment in July 2011 involving Hano and another co-worker, Jeff Needeman.[49] Again, the plaintiff failed to come forward with any evidence to dispute the defendant's evidence that if the plaintiff considered Hano's comment to Needeman as racial harassment, he never brought it to the attention of his supervisors Lee or Smith.[50]

With regard to plaintiff's claims based on actions that were taken after his initial EEOC charge - a ladder and tools he needed to perform his job were taken from his truck, vandalism of his truck and defacing his job assignment sheets - it is difficult to discern whether the plaintiff is claiming that these alleged acts were racial harassment, retaliation or both. Nevertheless, each of these allegation is addressed below in the context of examining any summary judgment evidence supporting the allegations and whether the defendant had knowledge and failed to take prompt remedial action.

With regard to the plaintiff's allegations of vandalism to his

---

[48] Lee and Smith affidavits, ¶ 9; Amond affidavit, ¶ 8.

[49] This incident involved a comment made by Needeman directly to Hano, where Hano made a comment back to Needeman referring to the "Afro-pic" Needeman had found during a work assignment. Plaintiff was in the room during the incident, but there is no evidence that the exchange between Hano and Needeman involved the plaintiff. Plaintiff depo., pp. 77-79.

[50] Lee and Smith affidavits, ¶ 11.

truck that resulted in a broken winch, the plaintiff acknowledged that he was speculating, but nonetheless believed that someone intentionally caused the damage.   Plaintiff reported it to Broussard and documented the damage, but there is no evidence that he ever reported it to Lee or Smith.[51]

With regard to tools he needed to perform his job and a ladder allegedly being taken from his truck, the plaintiff presented evidence that he advised Broussard, Amond, Lee and Smith of this complaint.  Assuming this was a complaint of racial harassment or retaliation, the plaintiff presented no evidence that the defendant failed to take prompt remedial action to address the complaint. Although he disagreed with the action taken by his supervisors, the plaintiff acknowledged that when he reported the problem and his belief that Hano took his tools, he was told to make a list of the missing tools and authorization would be obtained to purchase replacements.   Plaintiff testified that he got the new tools he needed and acknowledged that he never put the ladder on the list.[52]

---

[51]  Plaintiff depo., pp. 110-13, 122-26; Lee and Smith affidavits ¶ 8.

[52] Plaintiff depo., pp. 46-50, 53-61, 117-18.  Plaintiff's testimony is consistent with the document the plaintiff submitted that was authored by Smith and dated November 3, 2011.  Record document number 42-3, Exhibit 13.  This document recounts the plaintiff's meeting with Lee and Smith about the missing tools and the action taken to address it.  The document shows that the plaintiff could not say for sure that Hano took the tools. Nonetheless, his supervisors told him to make a list of the tools needed and the purchase would be authorized.

Finally, the plaintiff's alleged that his assignment sheet was defaced, but no action was taken when he reported it on February 3, 2012 to Trim in Human Resources.  Plaintiff testified that he did not know who did it or if it was a discriminatory act.  Accepting the plaintiff's statements that he did report the incident, a reasonable trier of fact could not infer that from the plaintiff reporting this one event that the defendant knew or should have known of alleged racial harassment but failed to stop it.

The uncontradicted summary judgment evidence shows that when the plaintiff was asked by Trim and Smith about the allegations in his EEOC charge of race discrimination related to his co-worker Hano, the plaintiff either refused or declined to discuss his complaints.[53]  This is consistent with the plaintiff's testimony where he admitted that, other than the incident with his assignment sheet, he never complained to anyone in human resources about any other alleged acts of discrimination.[54]  Notably, this incident was included in the plaintiff's EEOC charge filed on August 2, 2012, which did not include any allegations of race discrimination or

---

[53] Trim affidavit, ¶ 9; record document number 42-3, Exhibit 13.  Plaintiff acknowledged that he received BREC's employee handbook that included information about workplace harassment and how to report it.  Watkins affidavit, ¶ 38; record document number 42-4, Exhibit 35.

[54] Plaintiff depo., pp. 106-07, 175-77.

38

harassment, only retaliation.[55]  Considered as a whole, the evidence related to this alleged incident, fails to create a genuine dispute for trial on the question of whether the defendant knew or should have known of the harassment and failed to promptly remedy it.

Because the harassment alleged by the plaintiff was committed either by co-workers or supervisors who did not have authority to take tangible employments actions, the plaintiff has the burden of proving that his employer knew or should have known of the harassment and failed to take prompt remedial action.  The above analysis demonstrates that the evidence is insufficient for a reasonable trier of fact to infer that the defendant knew or should have know of alleged racial harassment against the plaintiff and failed to act promptly to remedy it.

### Louisiana Whistleblower Claim Under LSA-R.S. 23:967

An essential element of a plaintiff's claim under LSA-R.S. 23:967 is that the plaintiff must prove that he disclosed or threatened to disclose a workplace act or practice that is an actual violation of state law.

Plaintiff's claim under this state statute is that the defendant retaliated against him for complaining about race discrimination, which is conduct that violates state law.  However, under LSA-R.S. 23:967, unlike the federal anti-retaliation

---

[55] Record document number 22-3, Exhibit D.

provision under Title VII, the plaintiff must prove that the workplace act or practice that he complained about and for which he was subject to retaliation, actually violated state law.  Because the plaintiff failed to come forward with sufficient evidence to support his claim of race discrimination under the LEDL, he cannot establish this essential element of his state law whistleblower claim.  Therefore, summary judgment will be granted as to this supplemental state law claim.

## Conclusion

Accordingly, the Motion for Summary Judgment filed by defendant Recreation and Park Commission for the Parish of East Baton Rouge is granted on the plaintiff's claims under Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Louisiana Employment Discrimination Law, LSA-R.S. 23:332, for disparate treatment and hostile work environment based on race, and on the plaintiff's retaliation claims under Title VII.  Summary judgment is also granted to the defendant on the plaintiff's retaliation claim under the Louisiana Whistleblower Statute, LSA-R.S. 23:967.

A separate judgment will be entered in due course.

Baton Rouge, Louisiana, December 26, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

40